# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

ALAN EARL ROWE                                                                                    PLAINTIFF

VS.                                    4:08CV03943 JMM/JTR

ARKANSAS DEPARTMENT
OF CORRECTION; ET AL.                                                                        DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge James M. Moody. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the United States District Judge, you must, at the same time that you file your written objections, include a "Statement of Necessity" that sets forth the following:

      1.      Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence to be proffered at the requested hearing before the United States District Judge was not offered at the hearing before the Magistrate Judge.

3. An offer of proof setting forth the details of any testimony or other evidence (including copies of any documents) desired to be introduced at the requested hearing before the United States District Judge.

From this submission, the United States District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Room 149
> Little Rock, AR 72201-3325

## I. Background

In this § 1983 action, Plaintiff, Alan Earl Rowe, alleges that Defendants James Crumpton, Tracie Sanders, Henry Williams, Levester Butler and Albert Stewart, correctional officers at the ADC East Arkansas Regional Unit (the "ADC Defendants"), and Defendants Sarah Glass and Lynn Lewis, employees of Correctional Medical Services (the "CMS Defendants"), failed to provide him with timely medical care while he was incarcerated in the East Arkansas Regional Unit of the ADC.

In his deposition, Plaintiff testified that, on October 30, 2006, he was housed in eight-barracks, cell 43, on the third floor, or tier, of the barracks. (Pltf's depo. at 24, docket entry #95 at ¶4).[1] Around 5:45 p.m., he began experiencing constant and sharp abdominal pain. (Pltf's depo. at 23-24). At the 6:30 shift change, Plaintiff heard the voice of Defendant Tracie Sanders, who had entered the first tier of the barracks for pill call. (Pltf's depo. at 27). Another inmate told Plaintiff

---

[1] Excerpts from Plaintiff's deposition are filed as docket entries #91-6 and #95-2.

that Sanders was accompanied by CMS Defendant Sarah Glass. (Pltf's depo. at 27). Plaintiff was not scheduled for pill call. (Docket entry #95 at ¶3). Therefore, Plaintiff and other inmates shouted to get the attention of Sanders and Glass, but they never came up to Plaintiff's third-tier cell. (Pltf's depo. at 28).

Plaintiff did not see any other prison or medical staff until around 8:00 p.m., when Officer Ivy came by for a security check. (Pltf's depo. at 29). Plaintiff, who was lying on the floor of his cell, told Officer Ivy that he was having "real strong pains" in his stomach. (Pltf's depo. at 29). Officer Ivy asked Plaintiff if he could stand up. He replied that he could move, but it hurt. (Pltf's depo. at 29). Officer Ivy then asked Plaintiff to lie down on his bed, and continued his security check. (Pltf's depo. at 29).

Around 10:30 to 11:00 p.m., Officer Ivy returned with ADC Defendant James Crumpton for another security check of the barracks. (Pltf's depo. at 30). Plaintiff, who was still on the floor, told Crumpton that he was having "real hard pain" in his stomach, and asked if they would call the infirmary and get him some medicine. (Pltf's depo. at 30-31). Crumpton told Plaintiff that "the nurse" was across the hall performing pill call, and that she was dealing with someone who was having a "head" problem. (Pltf's depo. at 31). Crumpton told Plaintiff that he would try to get the nurse over to him, and then they left. (Pltf's depo. at 31).

Plaintiff did not see any other prison or medical staff until around 2:40 or 3:00 a.m. on October 31. At that time, ADC Defendant Henry Williams was in the barracks "to run kosher trays." (Pltf's depo. at 33). Plaintiff told Williams that he had "real sharp pains" in his stomach, and that he needed a nurse from the infirmary. (Pltf's depo. at 33). Williams told Plaintiff that he would get a nurse. (Pltf's depo. at 33).

Some time after 3:00 a.m., Plaintiff vomited on the floor of his cell. (Pltf's depo. at 35). Officer Decorsey came by and asked Plaintiff if he drank coffee because his vomit looked brown. (Pltf's depo. at 37). Plaintiff heard someone radio for a nurse. (Pltf's depo. at 35). Around 3:40 a.m., CMS Defendant Lynn Lewis arrived at Plaintiff's cell. (Pltf's depo. at 35). He told her he was having pain in his stomach. (Pltf's depo. at 37). Plaintiff recalled her having a stethoscope and that she might have put it on his stomach or chest. (Pltf's depo. at 37). Plaintiff did not recall Lewis explaining what she thought might be wrong with him. (Pltf's depo. at 37).

Lewis left and returned around 5:20 or 5:25 a.m. (Pltf's depo. at 37). She gave Plaintiff three Tylenol pills and told him that she would be back. (Pltf's depo. at 38). At the 6:30 a.m. shift change, ADC Defendant Levester Butler came by and Plaintiff told him: (1) that he had a medical issue; (2) Defendant Lewis saw him earlier but "just gave him pills;" and (3) he was still having the same stomach pains. (Pltf's depo. at 38-39). Butler told Plaintiff that he would get someone from the nurse's office shortly. (Pltf's depo. at 39).     Butler returned, along with ADC Defendant Albert Stewart, around 9:30 to 10:00 a.m. for shower call. (Pltf's depo. at 39). Plaintiff asked them if he could see "medical." (Pltf's depo at 39). Butler said that he had notified "medical" and that they were going to come. (Pltf's depo. at 42).

According to Plaintiff, Butler and Stewart returned around 1:45 p.m., after they had finished running lunch trays. (Pltf's depo. at 43). Butler and another woman escorted Plaintiff to the infirmary. (Pltf's depo. at 44). Plaintiff testified that he was able to walk, but that he had difficulty. (Pltf's depo. at 44).

Plaintiff reached the infirmary at 1:47 p.m. He immediately was seen by Dr. Clark, who arranged for him to be transferred to the hospital in Forrest City. (Pltf's depo. at 44-45). LPN Ann

Teer noted that Plaintiff was "sent here by unit MD to be sent to the ER" and that Plaintiff was complaining of pain from his lower abdomen to his chest. (Docket entry #2 at 14). Nurse Teer also wrote that:

> security reports sweating real bad on way to medical they state that he was also reported to [be] throwing up and did not eat lunch and refused shower which was out of character for him. Is being placed on ward until [he] can be moved to ER Forest City. No abnormalities seen at this time.

(Docket entry #2 at 14). On a CMS "Consultation Request" form, Dr. Clark noted that Plaintiff had "exquisite abdomen tenderness," lists a "presumed diagnosis" of "acute abdomen," and requests "transport to ER." (Docket entry #2 at 15).

Plaintiff was admitted to the Forrest City Medical Center at 3:17 p.m. on October 31 (Docket entry #2 at 16). He complained of "10 out of 10" "cramping" pain in his abdomen. (Docket entry #2 at 18). According to Plaintiff, the onset of pain had been "within the past 24 hours," and he reported vomiting once. (Docket entry #2 at 18). Plaintiff's examination revealed that he had "free air under the diaphragm." (Docket entry #2 at 21).

At 6:45 p.m. on October 31, the admitting physician, Dr. Mohamed Knefati, signed a form authorizing Plaintiff's transfer, via ambulance, to Southwest Hospital in Little Rock. (Docket entry #2 ast 16-17). This form further reflected that, at 7:20 p.m., a nurse at Southwest Hospital was telephoned and indicated that Southwest Hospital would accept the transfer. (Docket entry #2 at 17). Later that night, Plaintiff arrived at Southwest Hospital and was assessed by Dr. J.K. Buchman. Plaintiff complained of "the onset of epigrastic pain the evening before admission." (Docket entry #2 at 21). Plaintiff's abdominal examination revealed a "very small umbilical hernia," and free air in his abdomen. (Docket entry #2 at 21). Dr. Buchman's diagnostic impressions were: (1) a "perforated viscous, rule out gastric ulcer;" and (2) an umbilical hernia. (Docket entry #21 at

2).

Some time later on October 31, Dr. Buchman performed an exploratory laparotomy and found that Plaintiff had a "small perforation" at the pylorus (the portion of the stomach that meets the small intestine). (Docket entry #2 at 43). He sutured the perforation closed and made the postoperative diagnosis of "perforated gastric ulcer." (Docket entry #2 at 43).

Plaintiff was discharged from Southwest Hospital on November 4, 2006, and transferred back to the ADC. (Docket entry #2 at 19). His discharge diagnoses were: (1) a perforated pyloric ulcer; and (2) an umbilical hernia. (Docket entry #2 at 19). Plaintiff's discharge plan was "diet as tolerated" and "activity, non-strenuous." (Docket entry #2 at 19).

Plaintiff remained incarcerated at the EARU until he was released on parole some time in 2007. (Docket entry #92 at ¶9). In his deposition, Plaintiff testified that he was no longer experiencing any problems with his stomach or his surgical incision. (Pltf's depo. at 54).

On October 24, 2008, Plaintiff filed his *pro se* Complaint (docket entry #2) initiating this § 1983 action, and on December 5, 2008, he filed an Amended Complaint (docket entry #8). In those pleadings, Plaintiff alleges that: (1) Defendants denied him "timely and appropriate medical attention" (docket entry #8 at ¶¶2,3,5, and 6); (2) CMS Defendant Lewis "administered prohibited medication (Tylenol 3) . . . according to his medical condition" (docket entry #8 at ¶7); and (3) CMS Defendant Lewis "violated standard Arkansas Nursing Association & state corrections facilities protocol, rules, regulations and policy by not submitting a referral to an M.D. physician for a diagnosis" (docket entry #8 at ¶8). Based on that alleged misconduct, Plaintiff asserts claims of negligence and deliberate indifference in violation of his "Eighth Amendment and/or Fourteenth Amendment rights[.]" By way of relief, he seeks "no less than $250,000" in compensatory damages

and "no less than $500,000" in punitive damages.

On November 18, 2009, the ADC Defendants filed their Motion for Summary Judgment, Brief in Support, and Statement of Undisputed Material Facts. (Docket entries #90-92). On November 18, 2009, CMS Defendant Glass filed her Motion for Summary Judgment, Brief in Support, and Statement of Undisputed Material Facts. (Docket entries #93-95). On January 21, 2010, CMS Defendant Lewis filed her Motion for Summary Judgment and Brief in Support.[2] (Docket entries #109-10).

The Court gave Plaintiff a requested extension until February 22, 2010, to file responsive pleadings to Defendants' summary judgments papers. (Docket entry #106). On April 8, 2010, the Court entered an Order giving Plaintiff a "final extension," until April 19, 2010, to file responsive pleadings. (Docket entry #113).

Plaintiff elected not to file any responsive pleadings. Instead, on April 19, 2010, he filed a "Motion to Proceed In Court" claiming that he lacked the "necessary documents or information" to respond to Defendants' Motions. (Docket entry #115). Because Plaintiff has failed to file timely Responses to Defendants' summary judgment papers, despite being provided with ample time to do so, Defendants' Statements of Undisputed Material Facts will be deemed admitted. *See* E.D. Ark. Local Rule 56.1(c). The Court concludes that his "Motion to Proceed in Court" is without merit and should be denied.

The ADC Defendants argue that they are entitled to summary judgment because: (1) Plaintiff failed to exhaust his administrative remedies; (2) Plaintiff's allegations do not state an inadequate

---

[2]CMS Defendant Lewis adopted the Statement of Undisputed Material Facts filed by CMS Defendant Glass. (Docket entry #109 at ¶6).

-7-

medical care claim; (3) negligence is not actionable under § 1983; (4) they are entitled to sovereign immunity; and (5) they are entitled to qualified immunity. (Docket entry #91). The CMS Defendants argue that they are entitled to summary judgment because: (1) Plaintiff has failed to exhaust his administrative remedies; and (2) Plaintiff's allegations do not state an inadequate medical care claim.

For the reasons discussed below, the Court recommends that Defendants' Motions be granted, and that this action be dismissed with prejudice.

## II. Discussion

In *Estelle v. Gamble*, 429 U.S. 97, 104-08 (1976), the Court held that the Eighth Amendment's cruel and unusual punishment clause allows prisoners to sue prison officials who are deliberately indifferent to their serious medical needs. To succeed on an inadequate medical care claim, a prisoner must prove that: (1) he had an objectively serious medical need; and (2) prison officials subjectively knew of, but deliberately disregarded, that need. *See Estelle v. Gamble,* 429 U.S. 97 (1976); *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). In *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006), the Court made it clear that, in the context of a prisoner's claim of having received inadequate medical care, negligence, gross negligence, or a mere disagreement with the treatment decisions does not rise to the level of a constitutional violation.

Where an inmate claims that a delay in medical treatment constitutes an Eighth Amendment violation, "the objective seriousness of the deprivation should also be measured by reference to the effect of delay in treatment." *Laughlin v. Schiro*, 430 F.3d 927, 929 (8th Cir. 2005) (*quoting Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir.1995)). Importantly, in order for an inmate to establish this requirement, he "must place verifying medical evidence in the record to establish the

detrimental effect of delay in medical treatment . . ." *Laughlin*, 430 F.3d at 929 *(quoting Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir.1997)).

In his deposition and pleadings, Plaintiff admits that he was not having any medical problems before 5:45 p.m. on October 30, when he first began having abdominal pain. Minutes after he first vomited, some time after 3:00 a.m. on October 31, Plaintiff was seen by CMS Defendant Lewis. Approximately two hours later, around 5:20 or 5:25 a.m., Lewis returned and gave Plaintiff tylenol. At 1:47 p.m. on October 31, Plaintiff was escorted to the infirmary and examined by Dr. Clark, who sent him to the ER in Forrest City. Thus, within less than 24 hours after Plaintiff experienced stomach pain, he was admitted to a hospital.

Viewing these undisputed facts in the light most favorable to Plaintiff, they fall far short of establishing deliberate indifference. In addition, Plaintiff has failed to place verifying medical evidence in the record establishing the detrimental effect of any alleged delay in treatment. Finally, there is no evidence that Plaintiff's perforated ulcer was in any way caused, worsened, or complicated due to the "delay" he has alleged.

Plaintiff has failed to come forward with proof establishing a fact question as to any of the essential elements of his claims. Thus, as a matter of law, Plaintiff has failed to state a cognizable § 1983 claim against any of the Defendants for allegedly providing him with inadequate medical care.[3]

---

[3]There is no need for the Court to address Defendants' other arguments for summary judgment. However, the Court notes that both groups of ADC and CMS Defendants expend considerable effort arguing that Plaintiff did not properly exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e.

Defendants overlook the fact that Plaintiff had been released from prison and was no longer incarcerated at the time he filed his lawsuit. Numerous courts have held that, where a *former* prisoner files a lawsuit asserting a § 1983 claim over events that occurred while incarcerated, the

Similarly, his negligence claim is not actionable against any of the Defendants, all of whom are state actors.[4]

### III.  Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1.     Defendants' Motion for Summary Judgment (docket entries #90, 93, and 109) be GRANTED, and the case be DISMISSED, WITH PREJUDICE.

2.     Plaintiff's "Motion to Proceed in Court" (docket entry #115) be denied.

---

PLRA is *not* applicable.  *See Nerness v. Johnsonn*, 401 F.3d 874, 876 (8th Cir. 2005) ("the PLRA's exhaustion requirement only applies to "person[s] incarcerated or detained ...." 42 U.S.C. § 1997e(h). Accordingly, the exhaustion requirement does not apply to plaintiffs who file § 1983 claims after being released from incarceration."); *Doe v. Washington County*, 150 F.3d 920 (8th Cir. 1998) ("When he filed this complaint [alleging that he was beaten while detained in jail], Doe was neither incarcerated nor detained in any jail, prison, or correctional facility. The PLRA unambiguously applies to only those suits filed by prisoners. Doe was not a prisoner, and the PLRA therefore does not apply to his case."); *Norton v. City of Marietee*, 432 F.3d 1145, 1150 (10th Cir. 2005) ("In light of the PLRA's plain language, the other circuits to have addressed the issue have unanimously held that it is the plaintiff's status at the time he files suit that determines whether § 1997e(a)'s exhaustion provision applies. . . The other circuits have concluded that a plaintiff who seeks to bring suit about prison life after he has been released and is no longer a prisoner does not have to satisfy the PLRA's exhaustion requirements before bringing suit."); *Ahmed v. Dragovich*, 297 F.3d 201, 210 n.10 (3rd Cir. 2002) ("We note that every court of appeals to have considered the issue has held that the PLRA does not apply to actions filed by former prisoners.")

[4]Even is Plaintiff's state-law negligence claim was cognizable against the CMS Defendants, the Court would decline to exercise supplemental jurisdiction.  *See Gibson v. Weber*, 433 F.3d 642 (8th Cir.2006) (noting that Congress unambiguously gave district courts discretion in 28 U.S.C. § 1367(c) to dismiss supplemental state law claims when all federal claims have been dismissed). Furthermore, Plaintiff's negligence claim would have to be dismissed due to Plaintiff's failure to support it with expert opinion evidence.  Pursuant to Ark. Code Ann. § 16-114-206(a), the Arkansas Supreme Court has held that in actions for medical negligence the "plaintiff must prove the applicable standard of care; that the medical provider failed to act in accordance with that standard; and that such failure was the proximate cause of the plaintiff's injuries." *Williamson v. Elrod*, 348 Ark. 307, 311, 72 S.W.3d 489, 492 (2002).

Dated this 23rd day of June, 2010.

                                                                                         _____
                                                                                         UNITED STATES MAGISTRATE JUDGE